[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10554
Non-Argument Calendar
_____

D.C. Docket No. 5:10-cv-00243-CLS

DERRICK LUCY,

Plaintiff-Appellant,

versus

GEORGIA-PACIFIC CORRUGATED I, LLC,

Defendant-Appellee,

UNITED STEEL, PAPER AND FORESTRY, RUBBER,
MANUFACTURING, ENERGY, ALLIED INDUSTRIAL
AND SERVICE WORKERS INTERNATIONAL UNION,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(November 15, 2012)

Before MARCUS, WILSON and MARTIN, Circuit Judges.

PER CURIAM:

Derrick Lucy, an African-American male, appeals following the district court's grant of summary judgment in favor of Georgia-Pacific Corrugated I, LLC ("Georgia-Pacific") in his employment discrimination suit under Title VII and 42 U.S.C. § 1981. Lucy argues that the court erred by crediting Georgia-Pacific's proffered reason for Lucy's termination in light of the fact that, inter alia, the company failed to follow its own policy during a reduction in force ("RIF") and retained white employees with less seniority. After thorough review, we affirm.

We review a district court's grant of summary judgment de novo, applying the same legal standard used by the district court. Johnson v. Bd. of Regents of Univ. of Ga., 263 F.3d 1234, 1242 (11th Cir. 2001). We draw all factual inferences in a light most favorable to the non-moving party. Id. at 1243.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant bears the burden of production. Fickling v. United States, 507 F.3d 1302, 1304 (11th Cir. 2007). If the movant meets this burden, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." Id. "Speculation does not create a genuine issue of fact."

2

Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) (quotation omitted).

Likewise, a plaintiff cannot defeat summary judgment by relying upon conclusory

allegations. See Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to

discharge any individual, or otherwise to discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because

of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1).  Section 1981 of Title 42

provides that "[a]ll persons . . . shall have the same right . . . to make and enforce

contracts . . . to the full and equal benefit of all law and proceedings . . . as is enjoyed

by white citizens . . ." 42 U.S.C. § 1981.  Race discrimination claims under § 1981

have the same elements and requirements of proof as those under Title VII.  See

Chapter 7 Trustee v. Gate Gourmet, Inc., 683 F.3d 1249, 1256-58 (11th Cir. 2012);

Rice-Lamar v. City of Fort Lauderdale, Fla., 232 F.3d 836, 843 n.11 (11th Cir. 2000).

To evaluate claims based on circumstantial evidence of discrimination, a court

may apply the burden-shifting framework established in McDonnell Douglas Corp.

v. Green, 411 U.S. 792 (1973).  If the plaintiff bears the burden of making out a prima

facie case of discrimination, and the employer shows a legitimate, non-discriminatory

reason for the termination, id. at 802-03, the plaintiff must then offer evidence that

the reason is pretextual, Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th

Cir. 2004). Here, the district court concluded that Lucy established his prima facie case, and although Georgia-Pacific contests that conclusion in its brief, we need not consider those arguments because Lucy failed to demonstrate pretext.

To show pretext, a plaintiff must show that the employer's offered reason was not the true reason for its decision, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (quotation omitted). A plaintiff cannot successfully show pretext "by simply quarreling with the wisdom of that reason." Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). Moreover, the law is clear that the plaintiff's own evaluation and opinion is not a sufficient basis to establish pretext. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1332-33 (11th Cir. 1998). Instead, a plaintiff must show pretext with "concrete evidence in the form of specific facts." Bryant v. Jones, 575 F.3d 1281, 1308 (11th Cir. 2009) (quotation omitted).

Here, the district court did not err by granting summary judgment on Lucy's race discrimination claim. Lucy alleged that he was terminated in a RIF that allowed "bumping" of employees whereby senior employees took the jobs of junior employees, until Lucy, a black employee who worked in Georgia-Pacific's production

4

department, was at the point of bumping a junior employee in its all-white maintenance department. At that point, says Lucy, the rules were changed and Lucy, who was qualified to take the position, was denied his bumping rights and terminated.

As the record shows, however, there was no indication that Randy Hunt, the Converting Superintendent at Georgia-Pacific's Huntsville, Alabama, facility, was aware of any of Lucy's maintenance experience when Lucy was laid off. Lucy's application for Georgia-Pacific did not mention the three technical college courses he took, and did not include all of the tasks that he deemed maintenance-related that he performed at past jobs. The apparent lack of clarity regarding the qualifications required to work in the maintenance department did not detract from Hunt's explanation that he never even considered Lucy going to the maintenance department, because Hunt did not know that Lucy had any maintenance-related qualifications. The record also shows that no other employee bumped into the maintenance department at that time, and that maintenance jobs, unlike other jobs in the plant, did not have to be internally posted, which set that department apart from the others.

Further, the record shows that Lucy never told Hunt that he wanted to bump into the maintenance department or even discussed the possibility of doing so. Lucy argues that Hunt wrongly deprived him of an individual meeting, but Hunt simply concluded that, as the least-senior employee left, there were no remaining positions.

5

Indeed, because Lucy was the least-senior employee who was not immediately terminated, Lucy faced a high probability of losing out during the bumping process. Therefore, the court properly concluded that Hunt had no reason to consider putting Lucy, a manufacturing worker, into the maintenance department, which demanded some sort of different skill set and some exposure to risk.

Moreover, while it appears that at least three employees -- Donita Ratcliffe, Cedric Readus, and Pervis Williams, all of whom are black -- were not required to demonstrate their ability perform their new positions in the converting department with one hour of instruction, those employees had previously worked in the converting department, so Hunt assumed that they would be able to perform the tasks adequately. Although Hunt arguably did not apply the one hour rule consistently, that does not indicate that his explanation for terminating Lucy instead of bumping him into the maintenance department was a pretext for race discrimination. As this evidence also shows, although the parties disputed the semantics, the effect of the RIF was that several black employees took positions formally held by white employees, whether described as a bump or just filling an open spot. Either way, the less senior employees would have been displaced by the more senior employees during the RIF. Thus, allowing black employees to fill positions which used to belong to white employees does not show that Hunt's reason for laying off Lucy was pretextual. And

6

as for Lucy's claim that the allegedly racist atmosphere in the maintenance department somehow affected Hunt's decision, Lucy himself admitted that he had never witnessed any racist conduct at Georgia-Pacific or heard Hunt express any racially discriminatory sentiment.

Lucy's claim that Georgia-Pacific changed its proffered explanation similarly lacks merit. The wording in Georgia-Pacific's position statement to the EEOC in response to Lucy's charge of discrimination did not mention bumping because, at the time of the RIF, Hunt had no idea that Lucy was interested in bumping an employee in the maintenance department. Moreover, while the language is somewhat unclear, Georgia-Pacific has arguably maintained that the RIF was done based on plant seniority and conducted by going through the employees one department at a time.

Finally, that Richmond Haney, the only employee ever to have transferred into the maintenance department from another department, moved to the maintenance department did not suggest pretext since Haney's situation was not similar to Lucy's. The record indicates that Haney demonstrated a high degree of maintenance knowledge while working in the production department, and he testified that he had learned how to perform maintenance tasks just by observing maintenance employees during his 16 years at Georgia-Pacific. Long before the RIF, Plant Manager Melvin Yates had observed Haney's skills and sent him to assist the short-handed

7

maintenance department, which Haney did daily for eight months. After doing so, Haney formally applied for and received a maintenance position, beating out several other candidates. Haney's longer term at Georgia-Pacific, specific knowledge and experience working on the company's machines, and success in direct competition with other job applicants shows that Haney received the position on his own merit, and not because of any racial favoritism. Lucy, in comparison, never even indicated that he was interested in maintenance, and Hunt was not aware that he had any relevant experience. Therefore, Haney's transfer to the maintenance department does not indicate that Hunt's proffered reason was pretextual.

In short, Lucy failed to meet his burden of presenting concrete evidence showing that Georgia-Pacific's legitimate reason for his termination was a pretext for race discrimination. Accordingly, we affirm the district court's grant of summary judgment in favor of Georgia-Pacific.

**AFFIRMED.**